No. 21-2021

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**LARRY PHILPOT,**

*Plaintiff-Appellant,*

**v.**

**INDEPENDENT JOURNAL REVIEW,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia (Alexandria)
Case No. 1:20-cv-00590-AJT-TCB
Hon. Anthony J. Trenga

**APPELLANT'S BRIEF**

**Stacy A. Cole**
**Kristine M. Maher**
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, Kentucky 41017
Tel: (513) 629-2838
Fax: (513) 333-4358
Email: scole@graydon.law

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... vii

SUBJECT MATTER AND APPELLATE JURISDICTION...................................1

ISSUES PRESENTED FOR REVIEW ...................................................1

STATEMENT OF THE CASE ...........................................................2

   A.  Factual Background...........................................................2

   B.  Procedural History............................................................7

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT ...........................................................................9

      Standard of Review. .....................................................9

   THE TRIAL COURT ERRED BY DENYING PHILPOT'S MOTION FOR SUMMARY JUDGMENT. ...............................................................10

   A.  Philpot Established His Prima Facie Case for Copyright Infringement. .................................................................10

   B.  Philpot Was Entitled to Summary Judgment on IJR's 19 Asserted Affirmative Defenses....................................................11

   C.  IJR Failed to Establish that Philpot's Registration was Invalid. ...................................................................18

   THE TRIAL COURT ERRED BY GRANTING IJR'S MOTION BASED ON FAIR USE. ...............................................................21

   A.  IJR's Use of the Photo Was Not Transformative.........................22

   B.  The Other Three Fair Use Factors Weigh in Philpot's Favor. .......................27

CONCLUSION .........................................................................30

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).......................................................................................9

*Barcroft Media, Ltd. v. Coed Media Group, LLC*
  297 F. Supp. 3d 339 (S.D.N.Y. 2017) ...................................................23, 24, 25

*Bourne v. Walt Disney Co.*,
  68 F.3d 521 (2d Cir. 1995) ...........................................................................12

*Brammer v. Violet Hues Prod. LLC*,
  922 F.3d 255 (4th Cir. 2019) ...................................................................*passim*

*Calloway v. Lokey*,
  948 F.3d 194 (4th Cir. 2020) .........................................................................9

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)........................................................................22, 24, 28, 30

*Camreta v. Greene*,
  563 U.S. 692 (2011)......................................................................................27

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................9

*Cruz v. Cox Media Grp., LLC*,
  444 F. Supp. 3d 457 (E.D.N.Y. 2020) .......................................................25, 26

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*,
  332 F.3d 264 (4th Cir. 2003) ..........................................................................11

*Fallaci v. New Gazette Literary Corp.*,
  568 F. Supp. 1172 (S.D.N.Y. 1983) ................................................................16

*Friedman v. Guetta*,
  No. CV 10-00014 DDP, 2011 WL 3510890 (C.D. Cal. May 27, 2011)............29

*Gitter v. Cardiac & Thoracic Surgical Assocs., Ltd.*,
  338 F. A'ppx 348 (4th Cir. 2009)....................................................................18

*BWP Media USA, Inc. v Gossip Cop Media, Inc*.
   196 F. Supp. 3d 395 (S.D.N.Y. 2016) ..................................................30

*Graham v. James*,
   144 F.3d 299 (2d Cir. 1998) ...............................................................13

*Harper & Row Publishers, Inc. v. Nation Enters*.,
   471 U.S. 539 (1985).....................................................................14, 26

*Karpel v. Inova Health Sys. Servs*.,
   134 F.3d 1222 (4th Cir. 1998) ...........................................................11

*Kienitz v. Sconnie Nation*
   LLC, 766 F.3d 756 (7th Cir. 2014).....................................................22

*Konangataa v. Am. Broad. Co., Inc.*,
   No. 16-CV-7382 (LAK), 2017 WL 2684067 (S.D.N.Y. June 21, 2017)...........24

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
   271 F. Supp.2d 737 (D. Md. 2003)......................................................15

*Lyons P'ship, L.P. v. Morris Costumes, Inc*.,
   243 F.3d 789 (4th Cir. 2001) .............................................................12

*Monahan v. Obici Med. Mgmt. Servs.*,
   628 S.E.2d 330 (Va. 2006) .................................................................15

*Monge v. Maya Mag., Inc*.,
   688 F.3d 1164 (9th Cir. 2012) ............................................................26

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir.1999) ...........................................................10

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) .........................................................22, 25

*Muth v. United States*,
   1 F.3d 246 (4th Cir. 1993) .................................................................11

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
   284 F.3d 505 (4th Cir. 2002) .............................................................10

*Nunez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000) ................................................................ 24, 25, 26

*Perel v. Brannan*,
    594 S.E.2d 899 (Va. 2004) ................................................................ 18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ......................................................................... 16

*Philpot v. Media Research Center Inc.*,
    279 F. Supp. 3d 708 (E.D. Va. 2018) ................................................. 8, 27

*Saks v. Franklin Covey Co.*,
    316 F.3d 337 (2d Cir. 2003) .............................................................. 11

*Skidmore v. Led Zeppelin*,
    No. CV 15-3462 RGK, 2016 WL 1442461 (C.D. Cal. April 8, 2016) ............. 17

*Stewart v. Abend*,
    495 U.S. 207 (1990) ......................................................................... 28

*Sundeman v. Seajay Soc'y, Inc.*,
    142 F.3d 194 (4th Cir. 1998) .............................................................. 29

*TecSec, Inc. v. Adobe Sys.*,
    326 F. Supp. 3d 105 (E.D. Va. 2018) ................................................... 11

*Thomas M. Gilbert Architects, P.C. v. Accent Builders and Develop., LLC*,
    629 F. Supp. 2d 526 (E.D. Va. 2008) ................................................... 17

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) .............................................................. 19

*Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*,
    595 S.E.2d 1 (Va. 2004) .................................................................... 17

*W.C. English v. Rummel, Klepper & Kahl, LLP*,
    934 F.3d 398 (4th Cir. 2019) .............................................................. 9

*Warner Bros. Recs., Inc. v. Doe*,
    No. 5:08-CV-116-FL, 2008 WL 5111884 (E.D.N.C. Sept. 26, 2008) .............. 14

*Worldcom, Inc. v. Boyne*,
    68 F. Appx. 447 (4th Cir. 2003) .......................................................................18

**Statutes**

17 U.S.C. § 101 .......................................................................................19, 20

17 U.S.C. § 107 .......................................................................................21, 25

17 U.S.C. § 410(c) ...........................................................................................10

17 U.S.C. § 411(b)(1) ....................................................................................8, 21

17 U.S.C. § 411(b)(2) ......................................................................................21

17 U.S.C. § 501 ...................................................................................................1

17 U.S.C. § 504(a) ............................................................................................14

17 U.S.C. § 504(c)(2) ......................................................................................16

17 U.S.C. § 505 .................................................................................................7

17 U.S.C. § 507(b) ...........................................................................................12

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 2107(b) .........................................................................................1

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................9

Fed. R. Civ. P. 58 ..............................................................................................1

18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d] (3d ed.2011) ............27

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, §
    10.15[A] ..........................................................................................................13

U.S. Const. amend. I ........................................................................................14

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices,
§ 1904.1 (3d ed. 2021) ..........................................................................20

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices,
§ 1905.1 (3d ed. 2021) ..........................................................................19

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This case, on its face, appears to be an ordinary copyright infringement case with a fair use finding by the district court. But the district court's decision here, and in a similar case *Philpot v. Media Research Center Inc*., 279 F. Supp. 3d 708 (E.D. Va. 2018), effectively create a general newsworthiness exception to copyright, contradicting the Supreme Court in *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 561 (1985). In both decisions, the district court found a photograph's use transformative when it merely illustrated the subject of an article. This use is simply not transformative, and not fair use.

The district court determined that this Court's decision in *Brammer v. Violet Hues Prod. LLC*, 922 F.3d 255 (4th Cir. 2019) was inapplicable and did not overrule *Media Research Center.* Allowing both the district court's decision here and *Media Research Center* to stand, despite contrary holdings in *Brammer* and universally established federal case law, would gut the fair use analysis in the context of news reporting and media use, stripping photographers of their copyright protections.

That result defies the Copyright Act's core purposes.  And the Court should ensure that the district courts within this Circuit apply the correct analysis consistently. Given the potential impact of the district court's decision and this Court's ruling, Plaintiff-Appellant Larry Philpot respectfully requests oral argument.

## <u>SUBJECT MATTER AND APPELLATE JURISDICTION</u>

Plaintiff-Appellant Larry G. Philpot ("Philpot") sued Defendant-Appellee Independent Journal Review ("IJR") for infringement of Philpot's copyrighted photograph of musician Ted Nugent pursuant to 17 U.S.C. § 501. Because Philpot's claim raises a question of federal law, the district court had subject matter jurisdiction under 28 U.S.C. § 1331. On August 18, 2021, the district court granted summary judgment to IJR on its fair use defense and denied summary judgment to Philpot on his claims and IJR's affirmative defenses. (JA761-74.) A final judgment was entered on August 19, 2021 under Fed. R. Civ. P. 58. (JA775.) Neither party moved to amend or alter the judgment. On September 10, 2021, Philpot timely filed a notice of appeal to this Court under 28 U.S.C. § 2107(b). (JA776.) This Court has jurisdiction over this appeal from a final order that disposed of Philpot's claims. 28 U.S.C. § 1291.

## <u>ISSUES PRESENTED FOR REVIEW</u>

1.    Did the district court err by denying summary judgment in favor of Philpot on his copyright infringement claim and IJR's defenses?

2.    Did the district court err by granting summary judgment in favor of IJR on its fair use defense?

1

## STATEMENT OF THE CASE

This is a copyright infringement action arising from IJR's infringement of Philpot's copyright in his photo of musician Ted Nugent ("Photo").

**A.  Factual Background.**

1.  Philpot's Photo is a Copyrighted Work Offered for License.

Philpot is a professional photographer who has licensed his copyrighted works, including though photography agencies and to musical artists. (JA384-85 ¶¶2-5.) Philpot created the Photo in Indianapolis, Indiana on July 31, 2013 to identify Ted Nugent, by employing several creative decisions, including selecting the subject matter, angle of photography, exposure, composition, framing, location, and exact moment of creation. (JA385 ¶¶6-8; JA393.)

The Photo is an original work that Philpot registered with the U.S. Copyright Office as part of a collection of unpublished photographs on August 15, 2013. (*Id.* ¶9.) The Copyright Office issued Registration Certificate No. VAu 1-164-624, with an effective date of August 21, 2013, for the collection that included the Photo. (*Id.* ¶10; JA395-96.) Philpot is the exclusive owner of his copyright in the Photo. (JA385 ¶¶11-12.)

Philpot offered the Photo through Wikimedia for distribution, public display, and public digital performance subject to a Creative Commons Attribution-ShareAlike 3.0 Unported Generic license ("License"), under which rights are

"expressly made subject to and limited by [ ] restrictions" including that a user must "provide, reasonable to the medium or mean You are utilizing: (i) the name of the Original Author (or pseudonym, if applicable) if supplied, … (iii) to the extent reasonably practical, the URI, if any, that Licensor specifies to be associated with the Work…." (JA385-86 ¶¶13, 14; JA400 §4.a.)

Philpot offered the Photo under the License at http://commons. wikimedia.org /wiki/File:Ted_Nugent_2013.jpg, and required the attribution to include his name and URL for his website, www.soundstagephotography.com. (JA386-37 ¶¶15-16, 20-21; JA404-12.) This attribution provides monetary value, as advertising, for use of the work. (JA387 ¶17.) The License is expressly contingent on those terms. (*Id*. ¶¶18-19; JA400 §4.a.)

Philpot also offers and has offered the Photo for $3,500 for a paid license. (JA389 ¶37.) Philpot also markets the Photo on his website. (*Id*. ¶38.)

2.    <u>The Photo Was Unpublished on the Date Philpot Filed the Copyright Application and the Effective Date of Registration.</u>

Philpot did not publish the Photo before August 21, 2013. (Sealed JA ("SJA") 271 ¶12.) On August 8, 2013, Philpot entered an agreement related to his photography with AXS ("AXS Agreement"), which ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ (SJA272 ¶¶13, 15; SJA284.) ████████████████████

3

 . (SJA272 ¶16.)

, and . (*Id.* ¶17; SJA284-85; §1.b.)

(SJA272 ¶18; SJA285-86 §§1.d., 2.)

(SJA272-73 ¶19; SJA286 §2.)

. (SJA273 ¶¶20-21.)

(*Id.* ¶22.)

(*Id.* ¶23.)

4



(*Id.* ¶24; SJA290.)

(SJA273 ¶¶25-26.)

(SJA274 ¶¶27-28.) IJR did not dispute these facts. (*See* SJA380-82.)

      3.    <u>IJR Used the Photo Without License.</u>

IJR is a ███████████████, holding itself out as a "recognized news organization." (SJA123:10-13; JA268; JA761-62 ¶1.) IJR owns and operates www.ijr.com, www.injo.com, and www.ijr.org. (JA268.) ███████████ ██████████████████████████████████ which also specified that the Photo was copyrighted by Philpot and the License's terms for use. (SJA132, No. 8; JA386-87 ¶¶20-21; JA408-12.)

IJR used and displayed the Photo on its website at http://ijr.com/2016/03/ 572494-dads-conservative/ ("IJR Page") and its other sites as part of an article called *15 Signs your Daddy Was a Conservative* ("Article") (JA764 ¶11), allegedly "focused on social commentary and political viewpoints." (JA266.) The Article featured a list of 15 pictures, videos, and quotes, including the Photo with the

phrase "He Hearts 'The Nuge.'" (JA515; JA764 ¶11.) The photo credit with the Photo reads "Photo Credit: Wiki Commons,"—not the attribution to Philpot that the License required. (*Id*.)

IJR used a minimally cropped version of the Photo without material alteration or any criticism, comment, news reporting, teaching, scholarship, or research related to the Photo itself. (JA387 ¶¶31-32; JA414.) ████████████

████████████████████████ (SJA130, No. 3.)

On May 29, 2017, Philpot first discovered that the Photo appeared on the IJR Page and took a screenshot reflecting the date of discovery. (JA387 ¶¶22-23; JA414.) IJR never established that the Photo was not displayed on the IJR Page on that date, nor that Philpot should have found the infringement earlier through his "regularly perform[ed] image searches." (JA755:16-22; JA388 ¶29.) When Philpot visited the IJR Page on May 29, 2017, it did not include a link to any webpage that contained the copyright or attribution information for the Photo. (JA387 ¶25.)

Philpot did not authorize, permit, license, or provide consent, either expressly or implicitly, to IJR to copy, publish, reproduce, distribute, or publicly display the Photo, and IJR obtained no license to use the Photo in any way. (JA387-88 ¶¶26-27.)

6

**B.    Procedural History.**

Philpot sued IJR on May 26, 2020, with an Amended Complaint filed on

October 7, 2020. (JA1, 14-38.) Philpot elected to pursue statutory damages, and

sought costs, interest, and attorneys' fees under 17 U.S.C. § 505. (JA24.)

After its two unsuccessful motions to dismiss, IJR filed its Answer with 19

Affirmative Defenses. (JA182-92.) The parties engaged in discovery and

ultimately filed cross motions for summary judgment on March 16, 2021. Philpot

sought summary judgment on liability as to his claim and IJR's defenses. (JA330

*et seq*.; SJA24 *et seq*.) IJR sought summary judgment against Philpot under two

theories: (1) that Philpot's Registration was invalid, and (2) that IJR's use of the

Photo constituted fair use. (JA258 *et seq*.)

On August 18, 2021, the district court entered its Memorandum Opinion and

Order, granting IJR's motion based on its fair use defense and denying Philpot's

motion for summary judgment. (JA761-74.) The district court determined that an

issue of fact precluded a decision on the validity of Philpot's copyright registration.

(*Id*.) The district court entered judgment on August 19, and Philpot timely

appealed on September 10. (JA775; JA776.)

## SUMMARY OF THE ARGUMENT

Philpot appeals both the denial of his motion for summary judgment and the

grant of IJR's cross-motion for several reasons.

First, the district court erred as a matter of law in concluding that IJR's use of the Photo was fair use. The court erred by relying on *Philpot v. Media Research Center Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018) ("*MRC*") in concluding that IJR's use was transformative, and by finding that *Brammer v. Violet Hues Prod. LLC*, 922 F.3d 255 (4th Cir. 2019) was inapplicable. Instead, *Brammer* requires a finding that IJR's use was not transformative and not fair use. Both *MRC* and the court's decision here contradict established law on transformative use across the country. Affirming the decision here would effectively create a newsworthiness exception to copyright, which does not and should not exist.

Second, the district court erred as a matter of law in denying Philpot's summary judgment motion. Philpot established his case for infringement, which included the validity of his Registration. Although the district court did not grant IJR's summary judgment motion based on the alleged invalidity of Philpot's Registration, it did err in finding a genuine issue of material fact on that issue. The relevant facts were not in dispute. Rather, the dispute should have been resolved through a legal determination that the Photo was unpublished when Philpot filed his copyright application. Philpot was entitled to a presumption of validity as to the Registration, and IJR did not overcome that or obtain an advisory ruling from the Copyright Office under 17 U.S.C. § 411(b)(1). IJR also failed to meet its burden of proof on its remaining defenses.

Thus, Philpot was entitled to summary judgment in his favor.

## ARGUMENT

### Standard of Review.

The Court reviews "a summary judgment *de novo*, applying the same standard that the district court was required to apply." *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020)(citing *W.C. English v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 402-03 (4th Cir. 2019).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment may point to a lack of evidence in support of issues for which the nonmoving party bears the burden of proof, it then becomes the nonmoving party's burden to present evidence in support of the issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to survive a summary judgment motion. *Anderson*, 477 U.S. at 252.

## THE TRIAL COURT ERRED BY DENYING PHILPOT'S MOTION FOR SUMMARY JUDGMENT.

### A.    Philpot Established His Prima Facie Case for Copyright Infringement.

A claim for copyright infringement is comprised of two elements—(1) the plaintiff owns a valid copyright and (2) the defendant copied the copyrighted work without authorization. *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). Here, there was no genuine dispute as to any material fact regarding liability on Philpot's copyright infringement claim.

First, there was no genuine issue of material fact that Philpot created the Photo or that he holds the copyright in the Photo. (JA762-63 ¶¶5-6.) Philpot still exclusively owns the copyright in the Photo. (JA385 ¶¶11-12.) Because it was issued within five years of the Photo's creation, Philpot's Registration constituted prima facie evidence that the copyright is valid and that the facts stated in the certificate are correct. *See* 17 U.S.C. § 410(c).[1] Second, there was no dispute that IJR used the Photo without authorization because it did not provide the attribution required by the License. (JA764 ¶¶11-12.) As a result, Philpot met his burden to

---

[1] While IJR challenged the validity of Philpot's Registration (discussed *infra*), such challenge does not negate that he holds the *copyright* in the Photo. *Montgomery v. Noga*, 168 F.3d 1282, 1288 (11th Cir.1999) ("[f]or . . . original works of authorship created after 1977, copyright automatically inheres in the work at the moment it is created without regard to whether it is ever registered.") Instead, IJR's defense focused on whether Philpot met the procedural prerequisite for Philpot filing suit.

establish a prima facie claim for copyright infringement.

**B.    Philpot Was Entitled to Summary Judgment on IJR's 19 Asserted Affirmative Defenses.**

Affirmative defenses raise issues outside the plaintiff's prima facie case. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264, 271 (4th Cir. 2003) ("An affirmative defense is the 'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'") (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)). Summary judgment should issue against affirmative defenses "where the defense has no factual basis." *TecSec, Inc. v. Adobe Sys.*, 326 F. Supp. 3d 105, 109 (E.D. Va. 2018). IJR did not meet its burden of proof on its affirmative defenses (collectively, "Defenses").

1.    <u>IJR Waived Certain Defenses by Not Opposing Them in Response to Philpot's Summary Judgment Motion.</u>

This Court has "repeatedly held that issues raised for the first time on appeal generally will not be considered." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (citing *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)). IJR did not contest Philpot's summary judgment motion as to its First, Second, Eleventh, Twelfth, Fifteenth (as to estoppel), Eighteenth, and Nineteenth Defenses. (JA189-91; *see* JA475 *et seq.*) Because any opposition has now been waived and the Court should not consider any arguments for those Defenses that

IJR may raise, for the first time, here, Philpot will not address them further here.

### 2. Fourth and Seventh Defenses: Invalid Copyright Registration and Fair Use.

Philpot will address these Defenses separately, *infra*, at 18-30.

### 3. The Remainder of IJR's Defenses Fail as a Matter of Law.

Philpot was entitled to summary judgment on IJR's Third Defense for statute of limitations. (JA189.) 17 U.S.C. § 507(b) provides that a copyright claim must be "commenced within three years after the claim accrued." The claim "accrues when one has knowledge of a violation or is chargeable with such knowledge." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001) (internal quotation marks omitted).

Despite his reasonable diligence, Philpot did not discover IJR's infringement until May 29, 2017, when he took a screenshot of a portion of the IJR Page that displayed the Photo. (JA387-88 ¶¶23, 29; JA414.) ██████████████████████████ ████████████████████████████████████████ (SJA114:5-15.) IJR provided no other evidence to dispute Philpot's discovery date. Thus, Philpot's claim accrued on May 29, 2017, and he sued on May 26, 2020.

IJR's Fifth Defense that Philpot "expressly or implicitly granted a license to IJR to use of the Photograph and IJR complied with the terms of such license" failed for lack of evidence. (JA189.) The burden of proof in establishing a valid license rests with IJR. *See Bourne v. Walt Disney Co.*, 68 F.3d 521, 631 (2d Cir.

1995). The only license at issue, since IJR did not pay for a license and Philpot testified he did not grant one, was the License. (JA387-88 ¶¶26-27.) As the district court found, "IJR published the Photograph without the attribution on its website that Philpot required under the [License]." (JA764 ¶12; JA400.) Even though IJR claimed it linked the Photo to the Wikipedia entry for Ted Nugent, which linked to another page containing attribution,[2] the actual photo credit read "Photo Credit: Wiki Commons." (JA764 ¶12; JA400; JA515.)

The License grants rights that are "expressly made subject to and limited by" its attribution requirements, among other things. (JA400 §4.) As noted by the Second Circuit, "[i]f the nature of a licensee's violation consists of a failure to satisfy a condition to the license . . ., it follows that the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright." *Graham v. James*, 144 F.3d 299, 237 (2d Cir. 1998) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 10.15[A], at 10-121). Because IJR failed to meet an express *condition* of the License by failing to sufficiently provide attribution, IJR had no license to rely on. As a result, this Defense fails.

---

[2] Philpot disputes that the Photo was so linked on the day he discovered it (JA387 ¶25), but even if it were, such linking did not attribute Philpot and is insufficient under the requirements of the CC-3.0 License.

IJR's Sixth Defense for fair commentary, criticism, and dissemination protected by the First Amendment, duplicates its fair use defense. Copyright infringement is not protected under the First Amendment. *Warner Bros. Recs., Inc. v. Doe*, No. 5:08-CV-116-FL, 2008 WL 5111884, at *7 (E.D.N.C. Sept. 26, 2008), *rep. and rec. adopted*, No. 5:08-CV-116-FL, 2008 WL 5111883 (E.D.N.C. Dec. 4, 2008) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56 (1985)). Therefore, Philpot incorporates its arguments, *infra*, at 21-30.

IJR's Eighth Defense is based on IJR's claim that "Plaintiff suffered no damages as a result of Defendant's conduct." (JA189.) A copyright holder may recover the infringer's profits or elect to recover statutory damages regardless of whether the copyright holder suffers any damages. 17 U.S.C. § 504(a) ("Except as otherwise provided by this title, an infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer, …; or (2) statutory damages, … .") IJR did not establish that Philpot lacked damages from IJR's infringement. Philpot was damaged, at a minimum, by losing out on a license for the Photo and the value of the attribution in the Photo. Philpot was therefore entitled to summary judgment on this Defense.

In its Ninth Defense, IJR claims that "Plaintiff failed to make reasonable efforts to avoid, mitigate, or reduce its alleged damages." (JA190.) The Virginia Supreme Court, in a persuasive opinion, has held, "Unlike most affirmative

defenses, mitigation of damages is not a defense that, if proven, constitutes an absolute bar to the plaintiff's claim. Instead, [it] recognizes that a plaintiff's conduct following the defendant's negligence may be a reason for reducing damages" *Monahan v. Obici Med. Mgmt. Servs.*, 628 S.E.2d 330, 337 (Va. 2006) (internal quotation marks omitted). And IJR had no evidence that Philpot failed to mitigate. IJR pointed to the fact that Philpot did not send a cease and desist letter before suing. (JA505.) But that letter would not have reduced the value of the attribution or license fee in the first instance. Thus, Philpot was entitled to summary judgment on this Defense.

IJR's Tenth Defense states that it "acted in good faith, in a reasonable manner, with non-willful intent at all relevant times," and its Thirteenth Defense asserted that Philpot's recovery is limited by the doctrine of innocent infringement. (JA190.) Both Defenses fail. Copyright infringement is a strict-liability claim, and an infringer's intent is irrelevant to liability. *Brammer*, 922 F.3d at 265. ████

████████████████████████████████████████████

████████████████████████████ (SJA132, No. 8.) That page specified that the Photo was copyrighted by Philpot and that the License terms applied. (JA386-87 ¶¶20-21; JA408-12.) When this type of notice appears, a finding of innocent infringement for purposes of statutory damages is unwarranted. *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 752-53 (D. Md.

2003) ("The Copyright Act permits a court to reduce statutory damages to a mere $200 per infringed work if 'the infringer sustains the burden of proving . . . that such infringer was not aware and had no reason to believe that [its] acts constituted an infringement of copyright.'") (quoting 17 U.S.C. § 504(c)(2)).

IJR's status as ███████████████████ (SJA123:10-13) further shows that it knew or should have known that its acts constituted copyright infringement. *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (finding willfulness when the defendant was an experienced publisher of a copyrighted newspaper and therefore "was or should have been aware" that its actions constituted copyright infringement). Thus, Philpot was entitled to summary judgment on these Defenses.

IJR's Fourteenth Defense for laches fails because Philpot filed this suit within the statute of limitations period. In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014), the Supreme Court held that laches would not bar a copyright infringement claim for damages when the case was brought within the three-year statute of limitations period. The Supreme Court also held that laches can only apply to claims for equitable relief in "extraordinary circumstances." *Id.* at 667-68. No extraordinary circumstances exist here.

IJR's Fifteenth Defense states that Philpot's claim was barred by waiver because Philpot "licensed, agreed, and voluntarily permitted uncompensated use of

the Photograph by the public for personal, commercial, and other lawful uses."

(JA190.) Under Virginia law, "Waiver is an intentional relinquishment of a known

right. Two elements are necessary to establish waiver: knowledge of the facts basic

to the exercise of the right and the intent to relinquish that right." *Va. Polytechnic*

*Inst. & State Univ. v. Interactive Return Serv.*, 595 S.E.2d 1, 6 (Va. 2004) (cleaned

up). In copyright cases, waiver requires an intentional, affirmative act by a

copyright holder. *See Skidmore v. Led Zeppelin*, No. CV 15-3462 RGK (AGRx),

2016 WL 1442461, at *5 (C.D. Cal. April 8, 2016). Here, Philpot was entitled to

summary judgment on IJR's waiver Defense because (1) IJR had no evidence for

the second element—that Philpot had the actual intent to relinquish his

infringement claim against IJR or that he took any intentional action inconsistent

with his right to assert that claim, and (2) the evidence shows the opposite. (JA390

¶¶ 45-46.)

    IJR's Sixteenth Defense of "copyright misuse" fails. (JA190.) "[M]isuse of

copyright law is generally found in cases where the copyright owner has engaged

in some form of anti-competitive behavior." *Thomas M. Gilbert Architects, P.C. v.*

*Accent Builders and Develop., LLC* , 629 F. Supp. 2d 526, 536 (E.D. Va. 2008)

(collecting cases). "Copyright misuse has also arisen where the plaintiff attempted

to restrain the defendant from using material over which the plaintiff itself had no

rights." *Id.* Here, Philpot sought only to remedy infringement of *his* copyright and

IJR had no evidence to the contrary. Accordingly, Philpot was entitled to summary judgment on this Defense.

IJR's Seventeenth Defense for "unclean hands" likewise fails. (JA190.) This defense provides that a party may not obtain equitable relief if "the alleged wrongdoing of the party seeking relief ... 'encouraged, invited, aided, compounded, or fraudulently induced' the other party's wrongful conduct." *Gitter v. Cardiac & Thoracic Surgical Assocs., Ltd.*, 338 F. A'ppx 348, 349 (4th Cir. 2009) (quoting *Perel v. Brannan*, 594 S.E.2d 899, 908 (Va. 2004)). The defendant must show "a close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *Worldcom, Inc. v. Boyne*, 68 F. App'x. 447, 451 (4th Cir. 2003) (internal quotation marks omitted).

IJR argued that Philpot had unclean hands because he did not communicate with IJR before suing and allegedly breached inherent good faith and fair dealing requirements under the License. (JA508.) But neither argument supports this Defense because, even if true, they had nothing to do with IJR's unauthorized use of the Photo without attribution in the first instance. ██████████████ ██████████████████████████████ (SJA449:20-450:20.) Philpot was entitled to summary judgment on this Defense.

### C.    IJR Failed to Establish that Philpot's Registration was Invalid.

Philpot was entitled to summary judgment on IJR's Seventh Defense that

Philpot's Registration was invalid because, as IJR alleged, the Photo was published on August 8, 2013 by the AXS Agreement prior to being submitted to the Copyright Office in a collection of unpublished photographs. The district court denied both motions on this defense, finding an issue of material fact. (JA769.) But the court erred in denying Philpot's summary judgment motion—his Registration is valid.

IJR failed to carry its burden of proof in rebutting the presumption of validity in Philpot's Registration. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 428 (4th Cir. 2010), as amended (Aug. 24, 2010). Even so, "a reviewing court should assess other relevant indicia of ownership." *Id*. Even so, this Court should rule for Philpot.

17 U.S.C. § 101 defines publication as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." A work is not considered "published" when the distribution of that work is "subject to any express or implied restrictions concerning the disclosure of the content of that work." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, § 1905.1 (3d ed. 2021). The Copyright Office has also specified that determination of publication "should be

based on the facts that exist at the time the application is filed with the Office." *Id*.

§ 1904.1.

The facts surrounding Registration were not in dispute. *See supra*, at 4-6.

Instead, the issue turns on interpreting the AXS Agreement, and whether it

constituted publication of the Photo given Philpot's uncontroverted evidence that

███████████████████████████████████████████████████████

███████████████████████████████████████.

IJR relies on the "offering to distribute" portion of § 101, arguing that ██

███████████████████████████████████████████████████████

███████████████████████ (SJA380.) IJR's interpretation of the AXS

Agreement, that █████████████████████████████████████████████

█████████████████ (SJA288), leads to a logical fallacy. IJR's argument

███████████████████████████████████████████████████████

███████████████████████████████████ The AXS Agreement ███

███████████████████████████████████████████████

█████████████████████ (SJA284-88.) There was no "offer to

distribute" or actual distribution of the Photo until, at the earliest, █████████

███████████████████████████████████████████████████████

████████ As of the application date and Registration date, the Photo was factually

and legally unpublished.

A registration also satisfies the prerequisite-to-suit requirement even if it contains inaccurate information, unless: "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). The statute further provides that, when a party alleges inaccurate information was included in a copyright registration application, "the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* § 411(b)(2) (emphasis added). This requirement is mandatory before a court can conclude that the Register would have refused registration. Here, no request for advisement was made and no advisement given. Thus, Philpot was entitled to summary judgment on IJR's defense challenging the validity of his Registration.

### THE TRIAL COURT ERRED BY GRANTING IJR'S MOTION BASED ON FAIR USE.

The doctrine of fair use is governed by four factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. As this Court held in *Brammer*, "fair use 'is not designed to protect lazy appropriators. Its goal instead is to facilitate a class of uses that would

not be possible if users always had to negotiate with copyright proprietors.'" 922

F.3d at 262 (quoting *Kienitz v. Sconnie Nation* LLC, 766 F.3d 756, 759 (7th Cir.

2014)). IJR's use was not what fair use protects.

### A.     IJR's Use of the Photo Was Not Transformative.

The trial court's decision to grant summary judgment to IJR on its fair use

defense was error, and turned on the first of the four factors. In evaluating that

factor—the purpose and character of the use—courts consider whether the use is

transformative and for commercial rather than nonprofit purposes. *Campbell v.

Acuff-Rose Music, Inc*., 510 U.S. 569, 590 (1994). As the Third Circuit noted,

"*Campbell* has made it clear that the 'heart' of a claim for transformative use is

'the use of some elements of a prior author's composition to create a new one that,

at least in part, *comments on that author's works*.'" *Murphy v. Millennium Radio

Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) (citing *Campbell*, 510 U.S. at 580).

Fundamentally, IJR's use of the Photo does not imbue it with new function

or meaning as this Court requires to constitute transformative work. As held in

*Brammer*, "The 'central purpose' of the first factor's transformation inquiry is to

determine 'whether the new work merely 'supersede[s] the objects' of the original

creation.'" 922 F.3d at 262 (quoting *Campbell*, 510 U.S. at 579). The Court noted

that contextual transformation is typically only found in two situations—

technological use and documentary use. *Id*. at 263-64. Technological use is for

22

technological functions, such as placing entire student essays into a database for a

plagiarism detection service. *Id*. at 264. For documentary use, the work is used to

document a historical event and is "frequently accompanied by commentary on the

copyrighted work itself." *Id*.

> In an analogous description, the *Brammer* Court explained:

> The copying here does not fall into either of these categories, as Violent Hues used the Photo expressly for its content—that is, to depict Adams Morgan—rather than for data organization or historical preservation. Instead, Violent Hues' sole claim to transformation is that its secondary use of the Photo provided film festival attendees with "information" regarding Adams Morgan. *But such a use does not necessarily create a new function or meaning that expands human thought; if this were so, virtually all illustrative uses of photography would qualify as transformative.*

*Id*. (emphasis added). Just as in *Brammer*, IJR made minimal changes to the

Photo's content and context, using it solely to identify its subject. And IJR's

purpose would not have been hindered had it complied with Philpot's copyright or

license requirements. *See id*.

The Southern District of New York has also explained the purpose of

transformative use. In *Barcroft Media, Ltd. v. Coed Media Group, LLC,* the court

explained that criticism, commentary, and news reporting must be about the work

itself—not the *subject* of the work—to qualify as transformative use:

> CMG's use . . . had no transformative effect because it displayed the Images in the same manner and for the same purpose as they were originally intended . . . Display of a copyrighted image . . . may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*. . . [A] news report about a video that has gone viral . . . might fairly display a

> screenshot . . . to illustrate what all the fuss is about . . . [A] depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph. *In each such case, the copyrighted work is itself the subject of the story, transforming the function of the work in the new context.*

297 F. Supp. 3d 339, 351-52 (S.D.N.Y. 2017) (emphasis added) (citing

*Konangataa v. Am. Broad. Co., Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067,

at *1 (S.D.N.Y. June 21, 2017) and *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d

18, 25 (1st Cir. 2000)).

IJR did not transform the Photo. IJR minimally cropped negative space out

of the Photo, but that does not constitute transformation sufficient to qualify as fair

use. *See Brammer*, 922 F.3d at 263 ("The only obvious change … was to crop it so

as to remove negative space. This change does not alter the original with 'new

expression, meaning or message.'") (quoting *Campbell*, 510 U.S. at 579). And

IJR's use of the Photo was not accompanied by any criticism, comment, or news

reporting related to the photo. (JA515-17.) IJR argued the Article's purpose "was

to provide social commentary on current political issues during the 2016 election

year." (JA437.) Even if that was IJR's purpose for the Article, that was *not* the

purpose for using the Photo; instead, that purpose was the same as Philpot's—"to

identify Ted Nugent," although in a specific context.  (JA385 ¶7; SJA385). That is

not what fair use is intended to protect.

Other courts have consistently reached the same conclusion. In *Nunez*, the

court held the defendant's work was transformative because it used the photographs with editorial commentary *about the photos*. 235 F.3d at 23. The Court opined that "[i]t is this transformation of the works into news—and not the mere newsworthiness of the works themselves—that weighs in favor of fair use under the first factor of § 107." *Id*. In *Nunez*, the images were photographs of a model and the commentary focused on their controversial nature. *Id*. at 21. But IJR's commentary had nothing to do with the Photo. IJR could have used *any* Ted Nugent photo to illustrate the same point, and provided no commentary on the Photo itself.

In *Murphy*, the court declined to find transformative use when "[t]he defendants simply posted [the plaintiff's] photograph on their website" without broader news coverage or editorial commentary relating to the photograph. 650 F.3d at 307. The Eastern District of New York likewise found a defendant's use not transformative when it simply illustrated the subject of an article, noting its use did not "serv[e] to illustrate criticism, commentary, or a news story" about the image at issue. *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457, 468 (E.D.N.Y. 2020)(quoting *Barcroft*, 297 F. Supp.3d at 352). The court explained:

> To the contrary, Cox used the Photograph as a[n] illustrative aid because it depicted the subjects described in the Article," namely the arrest of Saipov. Nothing in Cox's Article imbues the Photograph with new meaning, or places it in a new context. Indeed, all Cox's Article says that could conceivably be about the Photograph is that "Saipov was taken into custody—the vast majority of the Article, by contrast, concerns Saipov's alleged terrorist acts

> leading up to his arrest. *To nonetheless find that Cox's use of the Photograph was fair would "eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law*.

*Id*. (cleaned up) (emphasis added). The defendant's use in *Cruz* at least included some mention of the event depicted in the photo—Saipov's arrest. But here, there was no comment at all on the Photo or the event in the Photo. Thus, *Cruz's* holding should apply—the use was not transformative in either case.

There is "no general newsworthiness exception" for fair use. *Monge v. Maya Mag., Inc*., 688 F.3d 1164, 1176 (9th Cir. 2012)(quoting *Nunez*, 235 F.3d at 20); *see also Harper & Row,* 471 U.S. at 561 ("The fact that an article arguably is 'news' and therefore a productive use is simply one factor in a fair use analysis."). The district court's finding, if upheld, would strip creators of control and protection of their works, allowing news and media organizations to use any photo, without a license, to illustrate the subject of an article. That result effectively nullifies the other fair use factors and creates a general newsworthiness exception.

The district court erred in distinguishing this case from *Brammer*. The district court relied on two characteristics in *Brammer* to distinguish it: that the defendant in *Brammer* (1) was a for-profit film festival, and (2) acted in bad faith. (JA772.) Neither renders *Brammer* inapplicable nor materially distinguishes it, where neither use commented on the work itself. And IJR admitted it is a for-profit company. (JA12-13.) Its use of the Photo was commercial, as it made advertising

26

money off the IJR Page where the Photo appeared.[3] IJR, a ████████ ████ (SJA123:10-13), ignored the License's attribution conditions. *Brammer* is on point and should guide this Court's decision.

The district court also erred in relying on *MRC*, which conflicted with virtually all established case law on transformative use. The facts of *MRC* may be "strikingly similar" to those here (JA771), but *MRC's* conclusion was error and ultimately not binding on the district court.[4] *MRC* was also decided prior to and conflicts with *Brammer*, which clarified this Court's stance on transformative use. This Court should affirmatively reject MRC and hold that use of a work in this context is not transformative.

**B.    The Other Three Fair Use Factors Weigh in Philpot's Favor.**

Weighing the other three fair use factors as well, Philpot's entitlement to summary judgment on IJR's fair use defense is clear.

1.    The Second Factor Weighs Against Fair Use.

The second factor—the nature of the copyrighted work—evaluates whether

---

[3] The district court also erred in focusing on "*de minimis* commercial gain," as *Brammer* did not consider the amount of commercial gain, which was similar in amount to this case, in considering whether the use commercial. (JA773.)  922 F.3d at 265.

[4] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134-26 (3d ed.2011)).

the work is creative versus purely factual. *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("[A] use is less likely to be deemed fair when the copyrighted work is a creative product."). IJR argued that the Photo is more factual than creative because it simply depicts Ted Nugent performing in concert.

Yet photographs generally receive "thick" copyright protection. *Brammer*, 922 F.3d at 266-67 ("When determining the thickness of a photograph's copyright, a court weighs the 'range of creative choices available . . .' As a basic matter, photographs . . . have long received thick copyright protection. This is so even though photographs capture images of reality.").

Photography made with creative decisions, including selecting the subject matter, angle of photography, exposure, composition, framing, location, and exact moment of creation is creative rather than factual, and weighs against fair use. *Brammer*, 922 F.3d at 267 ("In taking the photograph at issue here, Brammer made many creative choices . . . entitl[ing] the Photo to thick copyright protection."). Philpot created the Photo employing each of these types of creative decisions. (JA385 ¶8.) As a result, this factor weighs in Philpot's favor.

### 2. The Third Factor Weighs Against Fair Use.

In considering the third factor, courts must inquire "not only about the quantity of the materials used, but about their quality and importance, too." *Campbell*, 510 U.S. at 587. The defendant must take no more than is necessary to

accomplish its purpose. *Brammer*, 922 F.3d at 267-68. This Court recognized in

*Sundeman v. Seajay Soc'y, Inc.* that "this factor has favored copyright holders

where a significant percentage of the copyrighted work was copied, or where the

percentage was not great, but the copied portion essentially was the 'heart' of the

copyrighted work." 142 F.3d 194, 205 (4th Cir. 1998). Similarly, in *Brammer*, this

Court found this factor weighed against a finding of fair use where the defendant

"used roughly half of the Photo . . . and kept the most expressive features, which

constituted the 'heart of the work.'" 922 F.3d at 268.

When a defendant uses a substantial portion of photograph of a person,

including the person's face, courts find that the defendant copied the "heart" of the

copyrighted work. *See, e.g., Friedman v. Guetta*, No. CV 10-00014 DDP (JCx),

2011 WL 3510890, at *7 (C.D. Cal. May 27, 2011). IJR used a minimally cropped

version of the Photo without material alteration, including all of Nugent's face,

copying the heart of Philpot's Photo (JA388 ¶¶31-32; JA414.). Thus, this factor

weighs in Philpot's favor.

### 3.     The Fourth Factor Weighs Against Fair Use.

When evaluating the fourth factor, courts must consider "not only the extent

of market harm caused by the particular actions of the alleged infringer, but also

whether unrestricted and widespread conduct of the sort engaged in by the

defendant would result in a substantially adverse impact on the potential market for

29

the original." *Campbell*, 510 U.S. at 590 (internal quotation marks omitted). There is a presumption of cognizable market harm "when a commercial use is not transformative but instead amounts to mere duplication of the entirety of an original." *Brammer*, 922 F.3d at 268 (internal quotations omitted). This presumption still applies when less than all of a work is used for commercial purposes but the use "duplicate[s] the heart of the work by copying [the work's] most expressive features." *Id*. IJR's use included the heart of the Photo and, thus, the presumption of market harm applies.

IJR used the Photo to attract interest in an Article relating to Ted Nugent. Philpot markets the Photo for this purpose. (JA389 ¶38.) In similar cases, courts routinely find that this factor weighs against a finding of fair use. *See BWP Media USA, Inc. v. Gossip Cop Media, Inc*., 196 F. Supp.3d at 410 ("Defendant used the photo in exactly the same manner as any celebrity news site would: To tell a particular story about that particular celebrity.") This factor weighs against fair use.

## CONCLUSION

Philpot respectfully requests that this Court not only reverse the trial court's decision granting summary judgment to IJR, but also reverse the district court's decision denying summary judgment to Philpot, holding that he is entitled to summary judgment on his claim for liability and all of IJR's Defenses.

Respectfully submitted,

*/s/ Stacy A. Cole*
Stacy A. Cole
Kristine M. Maher
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, Kentucky 41017
Tel: (513) 629-2838
Fax: (513) 333-4358
Email: scole@graydon.law

*Counsel for Plaintiff-Appellant*

11454972.1