No. 21-2021

_____

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

**LARRY PHILPOT**

Plaintiff - Appellant

**v.**

**INDEPENDENT JOURNAL REVIEW**

Defendant - Appellee

_____

Appeal from the United States District Court

for the Eastern District of Virginia, Alexandria Division

_____

**BRIEF OF APPELLEE INDEPENDENT JOURNAL REVIEW**

Manuel Cordovez
Creativity IP PLLC
950 North Washington Street
Alexandria, VA 22314
Phone: (804) 876-2195
Fax: (804)-597-6398
Manuel.Cordovez@CreativityIP.com

*Counsel for the Independent Journal Review*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF CASE .....................................................................1

SUMMARY OF THE ARGUMENT .......................................................3

ARGUMENT .......................................................................................5

    I.    IJR's use of the Photograph was fair use ..................................5

        A.    Standard of review ........................................................5

        B.    IJR's use was transformative .........................................6

        C.    IJR's use was not exploitative .......................................13

        D.    The Photograph is factual ............................................15

        E.    The amount used ..........................................................16

        F.    IJR's use would not affect the potential market for the Photograph .....16

    II.    Philpot's did not establish a prima facia case of copyright infringement ...................................................................................17

    III.    The District Court correctly denied Philpot's Motion for Partial Summary Judgment on IJR's affirmative defenses ..................................19

        A.    Philpot's copyright registration was invalid .........................................20

           1.  Standard of Review ........................................................20

           2.  Philpot's copyright registration contained inaccurate information.....21

           3.  Philpot knew the information was inaccurate .....................................24

4.  The Register of Copyrights would refuse registration ........................25

B.   License ....................................................................................26

1.  The license was not terminated ..................................................27

2.  Attribution is a covenant not a condition precedent ...........................28

C.   Statute of limitations ................................................................29

D.   Non-willful intent.....................................................................30

E.   Innocent infringement ...............................................................31

F.   No damages.............................................................................33

G.   Failure to mitigate damages .......................................................34

H.   First amendment.......................................................................35

I.   Laches ...................................................................................35

J.   Waiver ...................................................................................36

K.   Copyright misuse .....................................................................36

L.   Unclean hands .........................................................................37

CONCLUSION .................................................................................38

STATEMENT REGARDING ORAL ARGUMENT ..............................39

SIGNATURE OF COUNSEL ..............................................................39

CERTIFICATE OF COMPLIANCE ....................................................40

CERTIFICATE OF SERVICE .............................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2nd Cir. 2021)........................................................................................ 11

*Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104 (1991) ..................................................................................................... 34

*A.V. ex rel. Vanderhye v iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)........ 15

*Barcroft Media, Ltd. v. Coed Media Grp.*, 297 F.Supp.3d 339 (S.D.N.Y. Nov. 2, 2017) ............................................................................................... 10, 11

*Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255 (4th Cir. 2019) .......*passim*

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ...... 6

*Bouchat v. Balt. Ravens Ltd. P'ship.*, 619 F.3d 301 (4th Cir. 2010) ........ 5, 13, 15

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .......................... 14, 17

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) ..................................... 5, 6, 10, 11

*Determined Prods., Inc. v. Koster*, 1993 WL 120463 (N.D. Cal. Apr. 13, 1993) .................................................................................................... 21

*Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980) ..................... 20

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors,* L.P., 948 F.3d 261 (5th Cir. 2020) ....................................................................... 34

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F.Supp.2d 223 (S.D. N.Y. 2012) ........................................................................... 21, 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991) ......... 17, 18

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) ....................................... 20

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881 (2019) ...................................................................................................... 18, 20

*Giddens v. Isbrandtsen Co.*, 355 F.2d 125 (4th Cir. 1966) ................................. 36

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ...................................... 26, 28, 37

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140 (9th Cir. 2019) .................................................................................................. 21, 25

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ........... 16

*In Re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) .................... 30

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir.1997) ............................ 28

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003).................................... 14

*Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990)........................ 37

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001) ...... 29

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F.Supp.3d 461 (S.D. N.Y. 2019). 31

*Morrissey v. Curran*, 423 F.2d 393 (2d Cir.1970), cert. denied, 400 U.S. 826 (1971)................................................................................................................ 19

*Murphy v. Millennium Radio Group LLC*, 650 F.3d 295 (3rd Cir. 2011).... 11, 12

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000).............. 12, 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ................... 29, 33

*Philpot v. Indep. Journal Review*, 1:20cv590 (E.D. Va. Nov. 30, 2021)...............

.................................................................................................... 9, 10, 15

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)..... 16, 17

*Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68 (1983) .................................. 36

*Stewart v. Abend*, 496 U.S. 207 (1990) ............................................................... 15

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535 (4th Cir.1998) ......... 37

*Virginia Polytechnic Institute v. IRS*, 595 S.E.2d 1 (2004)................................ 36

*White v. Daniel*, 909 F.2d 99 (4th Cir. 1990)............................................... 35, 36

**Other Authorities**:

17 U.S.C. § 101................................................................................................22, 24

17 U.S.C § 106 ...............................................................................................33, 37

17 U.S.C. § 107......................................................................................1, 6, 13, 18

17 U.S.C. § 408(a) ..............................................................................................18

17 U.S.C. § 408(c)(1)...........................................................................................21

17 U.S.C. § 410(c) ..............................................................................................20

17 U.S.C. § 411(b)(1) ..........................................................................................21

17 U.S.C. § 412....................................................................................................18

17 U.S.C. § 504(c)(2) ...................................................................30, 31

17 U.S.C. § 507(b) ............................................................................29

37 C.F.R. § 202.3(b)(4)(i) ................................................................21

Compendium of U.S. Copyright Office Practices, Third Edition §1106.1 ........25

Compendium of U.S. Copyright Office Practices, Third Edition §1906.1 ........22

## STATEMENT OF CASE

Philpot is a freelance photographer who specializes in taking photographs of musicians at concerts.  JA 17 ¶23.  On July 31, 2013, Philpot took a photograph of Ted Nugent performing in concert (the "Photograph").  JA 19 ¶23.  Philpot created the Photograph to identify Ted Nugent.  JA 385.

On August 8, 2013, Philpot entered into a license agreement with AXS-TV (the "AXS-TV License") for his photographs.  Sealed JA 284-288.  The AXS-TV License included the Photograph.  JA 319-320, response to Interrogatories 8-10. Philpot admitted knowing the difference between published and unpublished photographs for the purposes of registering copyrights.  JA 307-308.  However, Philpot included the Photograph in an unpublished collection of photographs when he applied for a copyright registration certificate with an effective registration date of August 21, 2013.  JA 28, JA 308.

On September 12, 2013, Philpot uploaded the Photograph to Wikimedia Commons, "the free media depository," for distribution, public display, and public digital performance under a Creative Commons license.  JA 20 ¶¶26-28, JA 30. The Wikimedia Commons page hosting the Photograph stated that "[t]his work is free and may be used by anyone for any purpose."  JA 30.  That page further stated that "[i]f you wish to use this content, you do not need to request permission as

long as you follow any licensing requirements mentioned on this page."  JA 30-31.

Attribution was listed as a requirement to maintain the license.  JA 31.

The Independent Journal Review ("IJR") is a recognized news organization.

JA 761 ¶1.  On or about March 30, 2016, IJR published an article titled "15 Signs

Your Daddy Was a Conservative" on its websites (the "Article").  JA 761 ¶11.

The Article used the Photograph as one of the examples of a conservative.  JA 761

¶11.  The Article published the Photograph without the exact attribution required

by Philpot in the Wikimedia Commons page.  JA 761 ¶12.  However, the Article

included a link to the Wikipedia entry for Ted Nugent, and through that, a link to

the Wikimedia Commons page hosting the Photograph with all the required

attribution information.  JA 761 ¶12.  Ultimately, IJR provided attribution to

Philpot reachable from the Article, albeit indirectly.  JA 773.

Philpot is a seasoned and sophisticated litigator, engaged in at least 10 other

copyright lawsuits since May 29, 2017.  JA 390-391 ¶49.

On May 26, 2020, Philpot filed his original Complaint for copyright

infringement.  JA 2 ¶12.  Philpot admitted he did not send a cease-and-desist letter

or a notice of infringement to IJR, or otherwise communicate with IJR concerning

the Photograph or the alleged infringement prior to filing his original Complaint.

JA 457.  Philpot alleges that IJR's use of the Photograph infringed his copyright

because IJR did not obtain the Creative Commons license or that the Creative

2

Commons license was terminated because IJR did not provide the exact attribution he requested.  JA 21-22 ¶¶39-40.

The only licensing fees, royalties, or other monetary compensation that Philpot has derived from the Photograph after posting it to Wikimedia are through retroactive licenses and settlement agreements.  Sealed JA 8-10, response to Interrogatories 10-12.

Philpot did not apply due diligence to discover IJR's alleged infringement.  Sealed JA-225, Sealed JA-229, Sealed JA-230.  Philpot lacked diligence in filing his copyright infringement action.  Sealed JA-226-228.

## SUMMARY OF THE ARGUMENT

The District Court's ruling that IJR's use was fair use under 17 U.S.C. § 107 is dispositive of all other issues on appeal.  To the extent that ruling is affirmed, all other issues discussed in Appellant's brief are moot.

I.    IJR's use of the Photograph was fair use.  As the District Court's decision makes clear, analysis of the fair use statute, 17 U.S.C. § 107, as interpreted in *Brammer,* supports a finding of fair use here.  While the Photograph merely portrays Ted Nugent in concert, the Article placed the Photograph in a new context for a different purpose.  IJR used the Photograph, not just to depict Ted Nugent in concert, but for a new function, identifying and documenting someone

who has outspoken conservative views and who has a dedicated following among political conservatives, who conversely, can be identified by their favorable view of him.  Given the application of the fair use factors in this case, and the lack of any clear error in the factual determinations supporting them, this Court should affirm the finding of fair use.

II.    Philpot's did not establish a prima facia case of copyright infringement.  The District Court did not err when it denied Philpot's Motion for Partial Summary Judgment based on its finding of fair use, thus finding that Philpot had not established a prima facia case of copyright infringement.  In addition, because there are at least questions of fact on whether Philpot's copyright registration certificate is invalid and whether IJR's use was done under a license, Philpot failed to establish an irrebuttable case of copyright infringement.

III.    The District Court correctly denied Philpot's Motion for Partial Summary Judgment on IJR's affirmative defenses.  IJR's affirmative defenses were rendered moot in view of the District Court's finding of fair use.  However, the District Court did not err in denying Philpot's Motion for Partial Summary Judgment on IJR's other affirmative defenses to the extent IJR created triable issues of fact.  Nonetheless, summary judgment on IJR's affirmative defenses should be granted in favor of IJR where there is no issue of material fact and IJR is entitled to judgment as a matter of law.

## <u>ARGUMENT</u>

**I.    IJR's use of the Photograph was Fair Use.**

**A.    Standard of review**

Four factors are used to evaluate the doctrine of fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 262 (4th Cir. 2019) (quoting

17 U.S.C. § 107).  In weighing these factors, courts should not treat the factors in

isolation, "but rather the results are to be weighed together, in light of the purposes

of copyright."  *Bouchat v. Balt. Ravens Ltd. P'ship.,* 619 F.3d 301, 308 (4th Cir.

2010) (internal citation and quotations omitted).  "The 'ultimate test' of fair use is

whether the progress of human thought 'would be better served by allowing the use

than by preventing it.'"  *Brammer,* 922 F.3d at 262 (quoting *Cariou v. Prince*, 714

F.3d 694, 705 (2d Cir. 2013)).

**"**The fair use defense presents a mixed question of law and fact.  In this

arena we review the district court's legal conclusions de novo and its findings of

fact for clear error."  *Bouchat,* 619 F.3d at 307 (citations omitted).

5

### B.    IJR's use was transformative

The first fair use factor addresses the "purpose and character" of the secondary use.  17 U.S.C. § 107(1).  The primary inquiry when assessing this first factor is "whether the use communicates something new and different from the original or otherwise expands its utility, that is, whether the use is transformative." *Brammer,* 922 F.3d at 262 (internal citation and quotations omitted).  In this regard, this Court has recognized that even wholesale reproduction of a work can be transformative if it places the work in a "new context to serve a different purpose," generating "a societal benefit by imbuing the original with new function or meaning."  *Brammer,* 922 F.3d at 263 (citations omitted).

"The transformation inquiry is largely objective."  *Id.*  "Often the 'only two pieces of evidence' that are 'needed to decide the question of fair use ... are the original version ... and the [secondary use] at issue.'"  *Id.* (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).  "What is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work".  *Id.* (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)).

In evaluating this element, the District Court correctly determined that the purpose and character of IJR's use was "transformative" when it applied the undisputed facts before it to the precedent established in *Brammer*.

IJR's secondary use of the Photograph transformed the original. As the District Court found, the original purpose of the Photograph was simply to depict Ted Nugent in concert. The District Court found undisputed that Philpot specializes in concert photography and that Philpot took the Photograph of Ted Nugent while performing in concert. JA-762 ¶¶ 5-6.

In contrast, IJR's purpose behind the article titled "15 Signs Your Daddy Was a Conservative" (hereinafter the "Article") – including all the images, videos, and quotes therein – was to provide social commentary on current political issues. JA 292-294. As the District Court found, the Article published by IJR Photograph "discussed how to determine whether a parent is or was conservative, and contained a checklist of 15 pictures, videos, and political quotes to determine being politically conservative." JA-764 ¶¶ 11.

In particular, the Article introduces 15 images, videos, and political quotes as signs that, when taken together, help a reader identify someone as having a conservative political view:

> Sometimes it's not until way later that people discover the political bent of their parents. In an effort to let kids discover their own political beliefs some parents never proselytize.

> That's not usually a problem for a conservative dad. But in case you're in the dark, here are 15 signs your Daddy is or was a conservative:

JA 292-294. As the District Court found, one of the Article's pictures displayed on its website as an example of a conservative was the Photograph, with the phrase

"He Hearts 'The Nuge.'"  JA-762 ¶11.  That is, the Article used the Photograph, displaying Ted Nugent in a camouflage vest and hat, as one of 15 signs to show that a parent was politically conservative: it identified Ted Nugent as a conservative political icon and indicated that, when taken together with the other 14 signs, being a fan of Ted Nugent indicated being politically conservative.  JA 292-294.  IJR's use was transformative because it commented on the Photograph in a new context: to identify Ted Nugent as an icon of political conservatism and to establish liking Ted Nugent as one of 15 signs to determine a parent's conservative political view.  Similarly, IJR's use of the Photograph had the social benefit of conveying a political message: Ted Nugent is an icon of political conservatism and can be used to identify a parent with a conservative political view.

As the District Court found, the Photograph was "clearly used 'for purposes such as ... comment, news reporting, [and] teaching, ... not an infringement of copyright.' It was part of a commentary on issues of public concern that placed it in a 'new context to serve a different purpose.' As such, the Photograph had a 'transformative use.'" JA 773.

This is in clear contrast to *Brammer*.  In *Brammer*, the defendant merely posted a cropped version of a photograph without any attribution or commentary[1].

---

[1] The District Court found that attribution to Philpot was provided by the Article, albeit indirectly.  JA 773.

*Brammer*, 922 F.3d at 261. The court found the use was non-transformative because merely cropping the photograph to remove negative space was purely functional and did not alter the original with new expression, meaning or message. *Brammer*, 922 F.3d at 263.

As the District Court later explained in further distinguishing the present case from *Brammer*:

> The Photograph of Ted Nugent was placed in a new context for a different purpose. More specifically, the Photograph was not used for the original purpose of simply depicting Ted Nugent in concert but rather for the purpose of identifying and documenting someone who has a following among political conservatives, who conversely, can be identified by their favorable view of him ("[They] heart[] 'The Nuge'"). For this reason, it was fundamentally different than the use of the photograph in *Brammer*, which simply depicted a scene for the same general purpose for which the photograph was originally taken.

*Philpot v. Indep. Journal Review* 1:20cv590 slip op. at 8 (E.D. Va. Nov. 30, 2021).

In his brief, Philpot does not challenge the factual findings of the District Court. Instead, Philpot inaccurately argues that in order to qualify as transformative use, the secondary use must include commentary on the Photograph itself or the event in the Photograph. *See* Doc. 15 at 25-26.

Philpot argues that *Brammer* held that "contextual transformation is typically only found in two situations – technological use and documentary use. *See* Doc. 15 at 22 (quoting *Brammer,* 922 F.3d at 263-264) (emphasis added). However, *Brammer* does not hold that transformative use is limited to only those

two situations.  Instead, *Brammer* notes technological use and documentary use[2] as recurring examples of transformative use: "By way of illustration, courts have typically found contextual changes sufficiently transformative in two recurring situations: technological uses and documentary uses." *Brammer,* 922 F.3d at 263-264.  While documentary uses "often have scholarly, biographical, or journalistic value, and are frequently accompanied by commentary on the copyrighted work itself," *Brammer*, 922 F.3d at 264. *Brammer* makes it clear that commentary on the Photograph itself is not a requirement of transformative use: "As the Second Circuit has explained, '[w]hat is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work.' *Brammer,* 922 F.3d at 263-264) (quoting *Cariou,* 714 F.3d at 707). As described above, what is important is whether the new use places the work in a "new context to serve a different purpose" and whether it generates "a societal benefit by imbuing the original with new function or meaning." *Id.*

Philpot nonetheless cites the district court opinion in *Barcroft Media, Ltd. v. Coed Media Grp. LLC*, to argue that any "criticism, commentary, and news reporting must be about the work itself – not the *subject* of the work – to qualify as transformative use." *See* Doc. 15 at 23 (quoting *Barcroft Media, Ltd. v. Coed*

---

[2] Regardless, as between these two categories, IJR's use of the Photograph, with its journalistic intent, would fall within the category of transformative documentary use. *See Philpot,* 1:20cv590 slip op. at n.5.

*Media Grp. LLC*, 297 F.Supp.3d 339, 351-352 (S.D.N.Y. Nov. 2, 2017)).

However, Philpot's interpretation of *Barcroft* is both in direct conflict with

*Brammer* and in direct conflict with Second Circuit precedent rejecting any

requirement that a secondary work must comment on the original work. *See Andy*

*Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99, 110 (2nd Cir.

2021) ("Although the most straightforward cases of fair use thus involve a

secondary work that comments on the original in some fashion, in *Cariou v.*

*Prince*, we rejected the proposition that a secondary work must comment on the

original in order to qualify as fair use.") (quoting *Cariou,* 714 F.3d at 706.)).  As

that Court found, the Second Circuit remains bound to *Cariou*.  *Id. at 111.*

Philpot also cites *Murphy* to argue that "the court declined to find

transformative use when '[t]he defendants simply posted [the plaintiff's]

photograph on their website' without broader news coverage or editorial

commentary underlining relating to the photograph.  *See* Doc. 15 at 25 (quoting *Murphy v.*

*Millennium Radio Group LLC*, 650 F.3d 295, 307 (3rd Cir. 2011) *(emphasis*

*added)*.  However, *Murphy* did not hold that fair use required commentary relating

to the photograph itself.  Instead, like *Brammer, Murphy* merely declined to find

fair use because the defendant merely posted the photograph to the internet,

without underlining any commentary:

> By contrast, no similar broader news coverage or editorial commentary
> existed in this case, as the Station Defendants simply posted Murphy's

photograph on their website.  The absence of <u>any</u> broader commentary—
whether explicit or implicit—significantly undercuts the Station Defendants'
argument that their use gave any new meaning to the Image.

*Murphy,* 650 F.3d at 307 (emphasis added).

As recognized in *Murphy*, the First Circuit's decision in *Nunez v. Caribbean
Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000), provides a useful example that use of
a photograph with commentary can be transformative, especially for journalistic or
news purposes[3].  By "using the photographs in conjunction with editorial
commentary, [the newspaper] did not merely 'supersede[ ] the objects of the
original creation[s],' but instead used the works for 'a further purpose,' giving
them a new 'meaning, or message.'"  *Murphy,* 650 F.3d at 307 (quoting *Nunez v.
Caribbean Int'l News Corp.*, 235 F.3d 18, 21-23 (1st Cir. 2000)).

Accordingly, IJR's use of the Photograph was transformative.  It was for a
fundamentally different purpose than that for which the Photograph was originally
taken.  It was used for commentary and news reporting on issues of public concern
about Ted Nugent, imbuing IJR's use with a new function, and placing it in a new
context to serve a different purpose.  The District Court's decision finding IJR's
use transformative, not only conformed with this Court's precedent in *Brammer,*
but also conformed with precedent in the 1st, 2nd, and 3rd Circuits.

---

[3] The District Court found that IJR is a recognized news organization.  JA 761 ¶1.

In addition, the District Court found additional facts that distinguished this case from *Brammer* and were relevant to a finding of transformative use.  JA 764 ¶¶12-13.  The District Court found that there was *de minimis* commercial gain and a lack of financial motive behind IJR's use.  JA 773.  In addition, the District Court found no demonstrable bad faith or negligent use of the Photograph, particularly by the terms under which Philpot allows the use of his Photograph, and finding that IJR provided attribution to Philpot, albeit indirectly.  JA 773.  *See Nunez*, 235 F.3d at 23 (finding appellee's good faith weighed in favor of transformative use where appellee attributed the photographs to the author and obtained the photographs lawfully when it believed in good faith that the photographs were available for general, unrestricted circulation and redistribution).

### C.    IJR's use was not exploitative

The first factor also requires a court to ask whether the "use is of a commercial nature or is for nonprofit educational purposes." *Brammer*, 922 F.3d at 265 (quoting 17 U.S.C. § 107(1)).  "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* (quoting *Bouchat,* 619 F.3d at 311).

13

"In assessing commerciality, a court also asks whether the use was exploitative, in that others usually pay to engage in similar conduct." *Brammer, 922 F.3d at 265.* In *Brammer,* the court found that Brammer sold licenses for stock use of his photos, and Violent Hues' failure to pay the customary fee was exploitative. *Id.* Here, however, it is clear Philpot made the Photograph freely and readily available for any user to use under the terms of a Creative Commons license. *See* JA 269 ¶¶12-14. There was no license fee required to use the Photograph, and IJR's use was incidental. As the District Court found, there was "*de minimis* commercial gain," and "no demonstrable market or financial injury to Philpot" from IJR's use of the Photograph. JA 773.

Even if IJR generated a minimal advertisement revenue, this would be insufficient to demonstrate that IJR's purpose was essentially commercial or exploitative. As the Supreme Court has stated: "[t]he more transformative the new work, the less will be significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Accordingly, even if IJR generated *de minimis* advertisement revenue on the Article, this would be insufficient to demonstrate that IJR's purpose was essentially commercial or exploitative for its use of the Photograph. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (finding "use of [copyrighted work] was more incidental and less exploitative in nature than more

14

traditional types of commercial use" where defendant did not use images directly to promote the website nor did defendant try to profit by selling the images directly). There is no dispute that the Article was published to provide political commentary, a quintessential fair use under the Copyright Act. Allowing IJR's incidental revenue of less than $3 to outweigh the obvious transformative use of the Photograph would be overly restrictive view of fair use.

**D.    The Photograph is factual**

"In considering the nature of the copyrighted work, the Supreme Court has instructed that 'fair use is more likely to be found in factual works than in fictional works,' whereas 'a use is less likely to be deemed fair when the copyrighted work is a creative product.'" *A.V. ex rel. Vanderhye v iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) (citing *Stewart v. Abend*, 496 U.S. 207, 237 (1990)). Because the Photograph merely depicts Ted Nugent performing in a concert, the image is more factual than creative. In fact, it is undisputed Philpot created the Photograph merely to identify Ted Nugent. JA 543. *See also Philpot*, 1:20cv590 slip op. at 8 (finding the original purpose of the photograph was to simply depict Ted Nugent in concert). In addition, "'the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose.'" *Bouchat,* 619 F.3d at 315 (citations omitted). As described above, the use of the Photograph was

15

transformative, and this second factor thus favorable or neutral towards a finding of fair use.

### E.    The amount used

"[T]hat the entire work is reproduced . . ., does not have its ordinary effect of militating against a finding of fair use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984).  Although Philpot claims that IJR used the entire Photograph in the Article, as demonstrated above, IJR's use was transformative.  Accordingly, IJR's transformative use outweighs the amount of the Photograph used and this third factor is neutral towards a finding of fair use.

### F.    IJR's use would not affect the potential market for the Photograph

The Supreme Court has described this fourth factor as "the single most important element of fair use."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).  In fact, "a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create."  *Sony Corp.*, 464 U.S. at 450 (1984).  In addition, the Supreme Court has recognized that "courts evaluating the

16

fourth fair use factor should consider whether a particular use 'produce[s] a harm cognizable under the Copyright Act.'" *Campbell*, 510 U.S. at 591.

Here, there is no market for Philpot to profit off the Photograph, which is available for free through Wikimedia. JA 763 ¶9. Accordingly, there is no evidence that IJR's use of the Photograph had or could have an adverse effect. As the District Court found, there was "no demonstrable market or financial injury to Philpot" from IJR's use of the Photograph. JA 773.

Finally, the "presumption of cognizable market harm" is limited to cases of mere duplication. No 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes." *Campbell*, 510 U.S. at 570 (citing *Sony Corp.*, 464 U.S. 417, 451). It is clear that IJR's use was more than mere duplication. As described above, IJR's use of the Photograph was transformative, and the presumption of harm does not apply. Accordingly, this fourth factor weighs heavily in favor towards a finding of fair use.

## II.    Philpot's did not establish a prima facia case of copyright infringement

To establish copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work. *See Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). As argued, however, under 17 U.S.C. § 107, if fair use is established, then the use of a copyrighted work does not infringe on the copyright owner's exclusive rights. 17 U.S.C. § 107. For that reason, the District Court did not err when it denied Philpot's Motion for Summary Judgment based on its finding of fair use, thus finding that Philpot had not established a prima facia case of copyright infringement.

Even without a determination of fair use, it is clear that Philpot cannot establish an irrebuttable case of copyright infringement due to the existence of disputed facts. Here, there is at least a question of fact on whether Philpot owns a valid copyright registration. Although a copyright may exist for the Photograph apart from a valid copyright registration, see § 408(a), a valid registration is required to sue for copyright infringement. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 887 (2019). This is especially the case here, where Philpot has elected to pursue only statutory damages[4]. *See* Doc. 15 at 7. Similarly, there is also at least a question of fact on whether IJR's use was unauthorized or whether it used the Photograph under a Creative Commons license that was not terminated. Accordingly, Philpot has not shown there was no genuine dispute of fact regarding his claim for copyright infringement, and the District

---

[4] Registration is a prerequisite for statutory damages. *See* 17 U.S. Code § 412

Court did not err in denying his Partial Motion for Summary Judgment on this issue.

### III.    The District Court correctly denied Philpot's Motion for Partial Summary Judgment on IJR's affirmative defenses

The District Court's finding of fair use was dispositive in this matter, and IJR's affirmative defenses were rendered moot in view of the District Court's finding of fair use.  JA 766 at n.5.  However, while the District Court held that some of IJR's affirmative defenses presented factual issues, *see* JA 766 at n.5, summary judgment should be granted in favor of IJR for the affirmative defenses where there is no issue of material fact and IJR is entitled to judgment as a matter of law.  *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.1970), cert. denied, 400 U.S. 826 (1971).

Philpot argues that IJR did not contest his motion for partial summary judgment as to the 1st, 2nd, 11th, 12th, 15th, 18th, and 19th affirmative defenses, and has therefore waived these defenses for purposes of appeal.  *See* Doc. 15 at 11. However, because the facts underlying these affirmative defenses overlap other arguments, IJR raised most of these affirmative defenses in its opposition to Philpot's Motion for Partial Summary Judgment.  For example, the 1st, 2nd, and 12th affirmative defenses were necessarily included in the discussion of the statute

19

of limitations, JA 490-492, fair use, JA 493-497, invalidity, JA 498-499, and

license, JA 499-501, defenses.  Similarly, IJR's 11th defense was included within

the damages discussion, as there are no profits involved in this action.  JA 504.

IJR 15th affirmative defense was discussed in terms of waiver.  JA 507.

Accordingly, these affirmative defenses have not been waived, and IJR will

similarly discuss these defenses within the discussion of IJR's other affirmative

defenses below.


### A.      Philpot's copyright registration is invalid

#### 1.  Standard of review

A valid copyright registration is required to bring a copyright infringement

claim. *Fourth Estate Pub. Benefit Corp.*, 139 S.Ct. at 887.  While a copyright

registration certificate provides prima facie evidence that the copyright is valid and

that the facts stated in the certificate are correct, 17 U.S.C. § 410(c), "the

presumption of validity may be rebutted where other evidence in the record casts

doubt on the question." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)

(internal citation and quotation marks omitted).  "[A] certificate of registration

creates no irrebuttable presumption of copyright validity.  Where other evidence in

the record casts doubt on the question, validity will not be assumed." *Durham

Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).

A copyright registration certificate is valid even if the certificate contains inaccurate information, unless the applicant knew that the information was inaccurate and the inaccuracy, if known to the Register of Copyrights, would have caused the Register to refuse registration.  17 U.S.C. § 411(b)(1).  For example, "[w]rongly identifying a number of published individual works as part of an unpublished collection has been deemed 'a fundamental registration error' invalidating the copyright registration."  *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F.Supp.2d 223, 225 (S.D. N.Y. 2012) (quoting *Determined Prods., Inc. v. Koster*, 1993 WL 120463, at *l (N.D. Cal. Apr. 13, 1993)).

## 2.  Philpot's copyright registration contained inaccurate information

The Copyright Act permits the registration of multiple works as a single work.  17 U.S.C. § 408(c)(1).  For purposes of registration as a single work, copyright regulations distinguish between published works and unpublished works.  *See* 37 C.F.R. § 202.3(b)(4)(i).  However, the Copyright Office will not accept a group of published and unpublished works in a single registration.  *See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1145 (9th Cir. 2019).

Philpot's copyright registration certificate for a collection of unpublished photographs has an effective registration date of August 21, 2013.  JA 28.  However, on August 8, 2013, Philpot entered into a license agreement with AXS-TV (the "AXS-TV License") for his photographs, including the Photograph.

21

Sealed JA 284-288. Philpot confirmed that the AXS-TV License was a license for the Photograph. JA 319-320, response to Interrogatories 8-10. Accordingly, the Photograph, which was submitted as an unpublished photograph, was, in fact, published within the meaning of 17 U.S.C. § 101 of the Copyright Act, which defines publication as follows:

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. <u>The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication</u>. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101 (emphasis added). "Specifically, publication occurs when one or more copies or phonorecords are offered to wholesalers, retailers, broadcasters, aggregators, or similar intermediaries for the purpose of distributing the work to the public or for the purpose of publicly performing or publicly displaying the work." Compendium of U.S. Copyright Office Practices, Third Edition, § 1906.1. For example, the Copyright Office considers that, "[p]ublication occurs when copies of a photograph are offered to clients, including but not limited to newspapers, magazines, agencies, wire services, and websites <u>with a license permitting further distribution or display of the photograph</u>." *Id.* (emphasis added). As in the example provided by the Copyright Office, Philpot offered all of his photographs, including the Photograph, under a license permitting further distribution or display of the Photograph to the public:

<u>The AXS-TV License included the Photograph</u>. [redacted] Sealed JA 284. [redacted] Sealed JA 285. [redacted] Sealed JA 285.

[redacted]

The AXS-TV License provided further distribution, performance, and

display.  Sealed JA 286.

The AXS-TV License applied to the Photograph, and the AXS-TV license

constituted an offer to distribute copies for further distribution, public

performance, or public display under 17 U.S.C. § 101.  Accordingly, the

Photograph was published, and Philpot's copyright certificate contained inaccurate

information.

### 3.  Philpot knew the information was inaccurate

Philpot clearly had knowledge that the information was inaccurate when he

filed his copyright registration application.  Philpot personally executed the AXS-

TV License just prior to submitting his copyright registration application for a

collection of unpublished photographs.  Sealed JA 288.  Accordingly, Philpot was

personally aware he had offered his photographs for further distribution and

display under the AXS-TV License and that the Photograph was published. *See Gold Value Int'l Textile, Inc.* 925 F.3d at 1148 (finding plaintiff knowingly included inaccurate information when plaintiff was "aware of the facts regarding its fabric sales; its inclusion of designs that it knew had been sold, and therefore published, in an unpublished collection cannot be characterized as an inadvertent or good faith mistake.")  Moreover, Philpot is a seasoned and sophisticated copyright litigator who has brought at least 10 other recent suits to enforce his copyrights.  JA 390-391 ¶49.  Philpot admitted understanding the difference between published and unpublished photographs for the purposes of registering copyrights.  JA 307-308.

### 4.  The Register of Copyrights would refuse registration

The Copyright Office's Compendium III makes it clear that "an applicant cannot use [the unpublished collection] option to register a number of published and unpublished works.  Compendium III § 1106.1.  *See Gold Value Int'l Textile, Inc.* 925 F.3d at 1148 (finding the Copyright Register would have refused registration of a published design as part of an unpublished collection).  *See also Family Dollar Stores, Inc.,* 896 F.Supp.2d at 231-232 (concluding that the inclusion of thirteen "previously published designs—including the design that [was] the basis for the lawsuit—in a collection of purportedly unpublished designs" was a material error because "the error invalidate[d] the registration as to

the very design that [was] the subject of [the] lawsuit.").  Accordingly, is clear that the Register of Copyrights would refuse to issue a registration certificate for an unpublished collection that included a published work.

As described above, Philpot copyright registration is invalid.  Nonetheless, the District Court found that there was a factual dispute on whether the Photograph was included in the AXS-TV License prior to his copyright registration application, JA 769, and Philpot agrees that the issue is a matter of interpreting the AXS-TV License, and whether it constituted publication of the Photograph.  *See* Doc. 15 at 20.  Accordingly, if not invalid as a matter of law, there is at least a question of fact on whether Philpot's copyright registration is invalid.


**B.    License**

"A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."  *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).  Here, it is undisputed that Philpot made the Photograph freely and readily available for any user to use under the terms of a Creative Commons license.  JA-21 ¶¶ 26-28.  As the District Court found, Philpot offered the Photograph through Wikimedia for distribution, public display, and public performance under a Creative Commons license, and anyone may use the work provided they adhere to the terms of the

license.  JA-763 ¶9.  IJR was not required to obtain permission or take any action to "obtain" the license.  *See* JA 30-31.  The license was automatically granted by exercising the rights to the work provided: "BY EXERCISING ANY RIGHTS TO THE WORK PROVIDED HERE, YOU ACCEPT AND AGREE TO BE BOUND BY THE TERMS OF THIS LICENSE").  JA-33.  Accordingly, the use of the Photograph was authorized pursuant to a Creative Commons license, and Philpot waived his right to sue IJR for copyright infringement.

### 1. The license was not terminated

Philpot argues that any Creative Commons license obtained by IJR was terminated because IJR did not provide attribution to Philpot.  *See* Doc. No. 15 at 13.  However, Philpot has not demonstrated that IJR failed to provide "reasonable" attribution.  Under the terms of the Creative Commons license, attribution may be implemented in any reasonable manner: "The credit required by this Section 4(c) may be implemented in any reasonable manner."  JA-36.  There was no finding by the District Court that the Creative Commons license was terminated.  In fact, the District Court ultimately found that IJR's article provided attribution to Philpot, albeit indirectly.  JA-773.  Accordingly, it is at least a question of fact whether the attribution provided by IJR was "reasonable" under the Creative Commons license.

In addition, it is also a contested question of fact whether the terms of the Creative Commons 3.0 license provided by Philpot in the Amended Complaint are

the terms for the license obtained by IJR.  Philpot does not believe that the

Creative Commons 3.0 License from 2018, included in the Amended Complaint,

are the same as the Creative Commons license in force in 2013, when the

Photograph was first uploaded to Wikimedia.  JA-482 ¶9.  Philpot did not deny this

contested fact in his reply brief in support of his motion for partial summary

judgment.  JA-709-710 n.45.

### 2.  Attribution is a covenant not a condition precedent

Any failure to comply with the attribution requirements of the Creative

Commons license is a breach of a covenant under the license and not a condition

precented to obtaining the license.  *See Graham,* 144 F.3d at 237 (holding that

payment of royalties and notice of authorship are to be considered covenants, not

conditions).  *See also Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 753 (11th

Cir.1997) (holding that payment of royalties and crediting of author were

covenants because "[the composer] expressly granted [the licensee] permission to

play the song before payment was tendered or recognition received").  If the

licensee's alleged conduct constitutes a breach of a covenant and the covenant is an

enforceable contractual obligation, the licensor's sole remedy is for breach of

contract.  *Graham*, 144 F.3d at 237-38 (citation omitted).

## C.    Statute of Limitations

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In *Petrella*, the Supreme Court held: "Section 507(b), it is undisputed, bars relief of any kind for conduct occurring prior to the three-year limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). "A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Id.* Under *Petrella,* Philpot's cause of action accrued on March 30, 2016, when the Article was published. JA 70 ¶3. Philpot filed his original action on May 26, 2020, over four years after the publication of the Article and over a year past the March 30, 2019, end of the three-year statutory period under *Petrella*. JA 2. Accordingly, Philpot's action should be barred because he failed to meet the three-year statute of limitations.

While *Petrella* casts strong doubts on whether the discovery doctrine should still be applied in copyright cases, *Petrella* acknowledges, without passing on the question, that nine Courts of Appeals have adopted a "discovery rule." *Petrella*, 572 U.S. at 700, n. 4. Under the "discovery rule," the three-year period starts when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Id., see also Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001) ("a claim accrues when one has

knowledge of a violation or is chargeable with such knowledge.") (internal quotation marks and citations omitted).

While IJR has shown that Philpot lacked the necessary diligence in discovering the alleged infringement, Sealed JA 157 ¶33, Sealed JA 163-164, the District Court nonetheless found that there was a factual dispute on whether Philpot was diligent enough.  JA 766 at n.5.  Accordingly, if not barred outright under *Petrella,* it is at least a question of fact whether Philpot was sufficiently diligent under the "discovery rule."

### D.    Non-willful intent

Under 17 U.S.C. § 504(c)(2), the copyright owner has the burden of proving that the infringement was committed willfully.  To prove "willfulness" under § 504(c)(2), the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights.  *See In Re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003).  However, Philpot admitted that he did not communicate in any way with IJR concerning the alleged infringement of the Photograph prior to filing his original Complaint on May 26, 2020.  JA 457.  Philpot has presented no evidence that IJR was aware of the alleged infringement any time before May 26, 2020, or that an error in

30

attribution would constitute copyright infringement.  In fact, the sole reference to

willfulness in this action is only in Philpot's First Amended Complaint:

"Defendant acted with willful disregard of the laws protecting Plaintiff's

copyrights."  JA 22 ¶ 47.  Accordingly, as a matter of law, Philpot has failed to

meet his burden to support the allegation that IJR's infringement was willful.  *See*

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F.Supp.3d 461, 468 (S.D. N.Y. 2019)

(finding that the mere assertion of willfulness in plaintiff's complaint was

insufficient factual support for the allegation that the infringement was willful).

### E.    Innocent infringement

Philpot has elected to pursue only statutory damages for its copyright

infringement claim.  *See* Doc. 15 at 7.  Under 17 U.S.C. § 504(c)(2), a court may

reduce the award of statutory damages to a sum of not less than $200 if an

infringer shows, and the court finds, that the infringer was not aware and had no

reason to believe that his or her acts constituted an infringement of copyright.  17

U.S.C. § 504(c)(2).  In this case, the facts clearly show that IJR was not aware and

had no reason to believe that its acts constituted copyright infringement.  First, as

the District Court found, Philpot made the Photograph freely and readily available

for any user to use under the terms of a Creative Commons license.  JA-763 ¶9.

IJR was not required to take any action to "obtain" the license.  The license was

automatically granted by exercising the rights to the work provided.  JA-33.
Furthermore, the Creative Commons license expressly allows any use permitted
under copyright law, including fair use, outside of the requirements of the license.
JA-34.  Second, as the District Court ultimately found, IJR provided attribution to
Philpot, albeit indirectly.  JA-773.  Lastly, the Photograph, as uploaded to
Wikimedia, did not include a copyright notice.  JA 27, JA 311.

Accordingly, while it may be a question of fact whether IJR's attribution
was reasonable under the terms of the Creative Commons license, IJR had no
reason to believe that the attribution it provided would constitute copyright
infringement or that its use of the Photograph would not be allowed as fair use
under the terms of the Creative Commons license.

In addition, Philpot admitted that he did not send a cease-and-desist letter or
a notice of infringement to IJR, or otherwise communicate concerning the alleged
infringement prior to his original Complaint.  JA 457.  Accordingly, it is
undisputed that IJR was not aware of the alleged infringement before Philpot filed
his original Complaint on May 26, 2020.  Because IJR was not aware and had no
reason to believe that its use of the Photograph would constitute copyright
infringement, IJR is entitled to summary judgment on this issue.

### F.    No damages

Philpot has elected to pursue only statutory damages for its copyright infringement claim.  *See* Doc. 15 at 7.  Accordingly, Philpot has waived his right to oppose this affirmative defense.  Regardless, Philpot has presented no evidence that he has suffered any damages from IJR's alleged infringement of the Photograph, much less any damages in the 3 years prior to filing suit, as required under *Petrella.  See Petrella*, 572 U.S. at 677.  First, as the District Court found, Philpot made the Photograph freely and readily available for any user to use under the terms of a Creative Commons license.  JA-763 ¶9.  Second, Philpot has not licensed the Photograph for a fee since making it available for free in 2013.  Sealed JA-154 ¶13.  As the District Court found, there was "no demonstrable market or financial injury to Philpot" from IJR's use of the Photograph.  JA 773.  Finally, to the extent that Philpot argues that it has been deprived the value of the attribution of the Photograph, any harm caused by the lack of attribution is not cognizable under the Copyright Act and should not be considered in evaluating actual damages.  *See* 17 U.S.C. § 106 (listing six exclusive rights in copyrighted works, not including the right to attribution).  In addition, IJR's use created no profits: the Article generated about $2 or $3 in advertising revenue for all IJR websites but cost $50 to $100 to produce.  *See* JA-504.  Accordingly, because Philpot has

suffered no actual damages and the Article generated no profits, IJR is entitled to summary judgment on this issue.

### G.    Failure to mitigate damages

The Supreme Court recognized that well-established common law principles are presumed to apply in the absence of a legislative intent to the contrary.  *See Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 104 (1991).  Mitigation is a common law duty imposed on the injured plaintiff to take reasonable steps to avoid or minimize the damages she has suffered on account of the defendant's actions.  In a case of first impression, the Fifth Circuit held that "failure to mitigate is not a complete defense to copyright," but recognized that failure to mitigate is a relevant factor in deciding the amount of statutory damages to be awarded.  *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 265 (5th Cir. 2020).  Here, Philpot admitted that he did not send a cease-and-desist letter or a notice of infringement to IJR, or otherwise communicated with IJR concerning the Photograph or the alleged infringement prior to his original Complaint.  JA 457.  Accordingly, it is at least a question of fact whether Philpot failed to mitigate his damages by failing to provide any notice or opportunity to IJR to correct the alleged error in attribution, and to what extent his failure to mitigate should reduce any statutory damages awarded.

34

## H.    First amendment

IJR's use of the Photograph exercised its First Amendment right to free speech and is a fair use.  As the District Court found, the Article published by IJR using the Photograph "discussed how to determine whether a parent is or was conservative, and contained a checklist of 15 pictures, videos, and political quotes to determine being politically conservative," JA 764 ¶11, and the Article was "part of a commentary on issues of public concern."  JA 773.  Accordingly, it is at least a question of fact whether IJR's conduct is protected under the First Amendment.

## I.    Laches

"The first element of laches--lack of diligence--exists where 'the plaintiff delayed inexcusably or unreasonably in filing suit.'" *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (citations omitted).  "The defendant may show lack of diligence either by proof that the action was not commenced within the period provided by the applicable statute of limitations or by facts otherwise indicating a lack of vigilance." *Id*.  While IJR has shown that Philpot lacked the necessary diligence in discovering the alleged infringement and the required diligence in filing suit, *see* Sealed JA-178, the District Court found that there may be a factual

dispute on whether Philpot was diligent.  JA 766 at n.5.  Accordingly, it is at least a question of fact whether Philpot lack of diligence supports IJR's latches defense[5].

## J.    Waiver

"[W]aiver is an intentional relinquishment of a known right." *Virginia Polytechnic Institute v. IRS*, 595 S.E.2d 1, 267 Va. 642 (2004) (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68 (1983).  As described above, Philpot filed his original action on May 26, 2020, over four years after the publication of the Article on March 30, 2016, and over a year past the March 30, 2019, end of the three-year statutory period.  *See* JA 2.  Accordingly, it is at least a question of fact whether Philpot relinquished his right to sue IJR when he delayed filing until after the end of the three-year statutory period.

## K.    Copyright misuse

Copyright misuse prohibits a copyright holder from using a copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright]

---

[5] Under *White,* the second element of a laches defense can be met by "the inference of prejudice warranted by the plaintiff's delay." *White*, 909 F.2d at 102 (citing *Giddens v. Isbrandtsen Co*., 355 F.2d 125 (4th Cir. 1966).  Moreover, IJR was also prejudiced by not having an opportunity to correct the alleged error in attribution for the Photograph or to resolve the dispute with Philpot before both sides incurred substantial litigation costs.

Office and which is contrary to public policy to grant." *Lasercomb Am., Inc. v.*

*Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990).  This defense functions as a bar on

recovery for copyright infringement.  *Id.*  Under copyright law, there is no

obligation for a licensee to credit an author of a copyrighted work.  *See generally*

17 U.S.C. § 106A; *Graham*, 144 F.3d at 236 (finding that failure to credit the

author with the copyright "did not itself amount to copyright infringement").

Accordingly, it is at least a question of fact whether Philpot attempts to enforce the

attribution obligation created exclusively under the Creative Commons license

through enforcement of his copyrights constitutes copyright misuse.


## L.    Unclean hands

In Virginia, every contract contains an implied covenant of good faith and

fair dealing.  *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th

Cir.1998).  Philpot admitted he did not communicate with IJR concerning the

Photograph or the alleged lack of attribution prior to filing his original Complaint

on May 26, 2020.  JA 457.  Accordingly, it is at least a question of fact whether

Philpot's enforcement of an alleged breach of the Creative Commons license as a

copyright infringement claim, when Philpot was aware of the attribution for years

and gave no notice or opportunity to cure the alleged breach, constitutes a breach

of the implied covenant of good faith and fair dealing under Virginia law.

37

## <u>CONCLUSION</u>

For the reasons noted above, IJR respectfully requests that this Court affirm the district court's judgment and grant summary judgment in favor of IJR.


Date: December 16, 2021          Respectfully submitted,


/s/ Manuel Cordovez
Manuel Cordovez
Creativity IP PLLC

*Counsel for the Independent Journal Review*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

IJR respectfully requests that this Court hold oral argument in this case.


Date: December 16, 2021          Respectfully submitted,


                                 <u>/s/ Manuel Cordovez</u>
                                 Manuel Cordovez (VSB No. 70914)
                                 Creativity IP PLLC
                                 950 North Washington Street
                                 Alexandria, VA 22314
                                 Phone: (804) 876-2195
                                 Fax: (804)-597-6398
                                 Manuel.Cordovez@CreativityIP.com

                                 *Counsel for the Independent Journal Review*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS

I HEREBY CERTIFY that this brief complies with the required type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): this brief contains 8,568 words, and this brief was prepared using Microsoft Word software in 14-point Times New Roman.

<u>December 16, 2021</u>          <u>/s/ Manuel Cordovez</u>
                                  Manuel Cordovez
                                  Creativity IP PLLC

                                  *Counsel for the Independent Journal Review*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and that service of this filing will be perfected on all ECF-registered counsel through this system.

                                  <u>/s/ Manuel Cordovez</u>
                                  Manuel Cordovez
                                  Creativity IP PLLC

                                  *Counsel for the Independent Journal Review*